IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>NAVIN KHANNA, a/k/a "Lovin,"<br>a/k/a "Logan,"<br><br>            Defendant. | Filed Under Seal<br><br>Case No. 22-CR-348-GKF |

**GOVERNMENT'S MOTION FOR A STAY AND FOR REVOCATION
OF RELEASE ORDER AND MEMORANDUM IN SUPPORT**

For the reasons set forth below, this Court should stay the release order for Navin Khanna issued by District of New Jersey Magistrate Judge Edward S. Kiel on November 16, 2022. Further, this Court should revoke the November 16, 2022 order authorizing the pretrial release of Khanna.

**I.**

**Stay and Revocation of the Release Order**

The government will file a Notice of Appeal before close of business on November 16, 2022. The United States is requesting a permanent stay of the release order issued in the present case unless and until it is lifted by the District Judge in the Northern District of Oklahoma. Further the government is moving under Title 18, United States Code, Section 3145(a) to revoke Khanna's pretrial release.

## II.

## Factual Statement

**Investigation and Procedural History**

Catalytic converters are a component of an automotive vehicle's exhaust device that reduce the toxic gas and pollutants from a vehicle's internal combustion engine into safe emissions by catalyzing a redox reaction process. Catalytic converters are required components on all automobiles in the United States as regulated by the Environmental Protection Agency.

Catalytic converters are targeted by criminals due to the precious metals (palladium, platinum and rhodium) contained within the converter's internal catalyst or core. These metals are commonly referred to as platinum group metals ("PGMs"). A worldwide supply shortage has continued to bring about an increase in PGMs' demand and value. Shortages from reduced mining operations in Africa, the implantation of similar environmental regulations requiring catalytic converters on vehicles in China, and international shipping delays have driven prices to an all-time high.

In November of 2020, the Tulsa Police Department (TPD) noticed a drastic increase in catalytic converter thefts in Tulsa, Oklahoma. Local law enforcement began investigating the thefts, illegal scrap metal trafficking, and money laundering within Tulsa and the state of Oklahoma and noticed these crimes were part of

numerous ongoing criminal enterprises across the United States. Catalytic converter theft has become a nationwide problem.

TPD arrested several suspects involved in the catalytic converter thefts, including low-level thieves, identified as "cutters". The investigation has shown catalytic converters are often stolen using handheld power tools and automotive tools. Cutters often have extensive criminal histories to include theft, drug possession and drug distribution. Cutters have focused their efforts on catalytic converters because of the lucrative profit. Further, the lack of serial numbers, VIN information or other distinctive identification features on catalytic converters, and the lack of legislative and statutory regulations create evidentiary difficulties for law enforcement.

Cutters sell the stolen catalytic converters to "intermediate buyers." The investigation has revealed that many intermediate buyers purchase stolen catalytic converters through outwardly legitimate businesses with ties to scrap metal production, including automotive repair shops and used car dealerships.

Intermediate buyers resell the stolen catalytic converters to bulk purchasers, or "core buyers." Large-scale core buyers purchase the stolen catalytic converters and then package and transport the shipments across state lines. The investigation has revealed that core buyers resell the stolen catalytic converters to "recyclers," domestic industrial recycling plants, where the catalytic converters are refined and the PGMs are extracted. Core buyers also ship stolen catalytic converters to coastal

ports to be shipped to foreign refineries. Refineries extract the PGMs and wire payment to the core buyer once the quantity of the precious metals is determined.

Investigators identified Navin Khanna a/k/a "Lovin," a/k/a "Logan," to be the owner and operator of DG Auto, which is involved in the nationwide bulk purchasing and transportation of catalytic converters. Khanna resides in New Jersey and coordinates the large-scale transportation of stolen catalytic converters and provides sellers logistical and financial support. DG Auto has several locations, advertised on their public website, including New Jersey, Wisconsin, Virginia, and Mississippi. The investigation has identified DG Auto providing financial assistance to intermediate buyers by supplying cash flow to core buyers. DG Auto operates in bulk currency, as the operation requires large sums of cash on hand to purchase bulk catalytic converters from illegitimate intermediate buyers.

The investigation to date has gathered information from various sources, including: physical surveillance, electronic surveillance, Facebook search warrants, confidential sources, undercover investigators, the analysis of pen register, trap/trace, and call record information of telephones believed to be used by members of the DG Auto organization, and the interception of electronic communications over Facebook by members of this organization and wire and electronic communications on telephones used by members of this organization.

While intercepting wire and electronic communications, investigators were able

to identify that the DG Auto organization is structured as a pyramid with a tiered structure. Tier 1 buyers are separated geographically throughout the entire United States and oversee the lower Tier 2 and Tier 3 buyers, which are smaller, local or regional core buyers. The lower tiered buyers are restricted to selling catalytic converters to their regional Tier 1 buyers and not directly to DG Auto, creating a monopoly for Tier 1 buyers within their region. Through these observed communications, investigators learned that Khanna and Tier 1 buyers have discussed the tier system and which tiers to assign specific affiliates of the DG Auto organization.

In furtherance of the investigation, the government obtained a Title III Order from the honorable Claire Eagan authorizing the interception of wire and electronic communications. Many of the intercepted communications involve Khanna and demonstrate criminal intent and knowledge of the stolen source of the catalytic converters, as well as Khanna providing assistance to Tier 1 buyers to facilitate illegal activity, including in the Northern District of Oklahoma.

Khanna is the target of multiple prosecutions. United States Attorney's Offices are working conjointly. On October 5, 2022, an arrest warrant was issued in the Northern District of Oklahoma for Khanna following his indictment by a federal grand jury for Conspiracy, in violation of Title 18, United States Code, Sections 371 and 2, Sale and Receipt of Stolen Goods, in violation of Title 18, United States

Code, Sections 2315 and 2, Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Sections 1956(h), and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957(a).

On October 20, 2022, an arrest warrant was issued in the Eastern District of California for Khanna following his indictment by a federal grand jury for Conspiracy to Transport Stolen Property Interstate, in violation of Title 18, United Stated Code, Section 371, Conspiracy to Launder Money, in violation of Title 18, United Stated Code, Section 1956(h), and Interstate Transportation of Stolen Property, in violation of Title 18, United Stated Code, Section 2314.

**Initial Appearance in New Jersey**

On November 2, 2022, Khanna was taken into custody on the California arrest warrant in New Jersey. On the same day, Khanna made an initial appearance in the District of New Jersey. The government requested that Khanna be detained and that a detention hearing be held. The Magistrate found that there were conditions which would insure Khanna's appearance at future court appearances and safety to the community. The Court imposed conditions of release and set an unsecured appearance bond. At the hearing, the government did not request a stay of the Magistrate's order of release. However, after the hearing, the attorney for the government did contact the Magistrate and the defendant and did request the

Magistrate stay the release order to provide an opportunity for an appeal by the U.S. Attorney's Office in the Eastern District of California. The Magistrate denied this request, noting that the time for a stay of his order had passed in that Khanna had already been released.

**Stay of Release by Eastern District of California**

On November 3, 2022, the government filed a motion to revoke the release order and a motion to stay the defendant's release. On the same day, the Chief United States District Judge in the Eastern District of California ordered (1) a stay as to release of Khanna and (2) that the United States Marshal's Service promptly transport Khanna to the California for proceedings on the government's motion to revoke the release order.

**Second Appearance in New Jersey**

On November 10, 2022, Khanna made an initial appearance on the Oklahoma indictment in the District of New Jersey. The government requested Khanna be detained and that a detention hearing be held. This hearing was continued to November 16, 2022. During this hearing, the Magistrate found that there were conditions which would insure Khanna's appearance at future court appearances and safety to the community. The Court released Khanna on conditions. The government requested a stay of the defendant's release and the Court granted this for

48 hours.[1]

**Oklahoma Motions for Detention and Motion for Detention Hearing**

From the investigation, agents know Khanna can and does travel outside the United States for business and pleasure. Among locations he has traveled are Belgium, Germany, France, Canada, United Arab Emirates, South Korea, India, and Spain. Unlike many defendants who appear before this Court, Khanna has access to liquid assets. The government sought seizure warrants for accounts identified by agents. However, agents aren't certain they have identified all of Khanna's bank accounts. Based on the investigation, the government is aware that Khanna has controlled millions of dollars in illegal process. During the scheme, Khanna transferred approximate amounts as follows:

1. $13 million in wire transfers from Khanna to Tyler Curtis;
2. $5 million in bulk cash transfers from Khanna to Tyler Curtis;
3. $24,000 in in wire transfers from Khanna to Benjamin Robert Mansour;
4. $45.5 million in wire transfer from Khanna to Adam Sharkey; and
5. $6.1 million in wire transfers from Khanna to Martynas Macerauskas.

On November 2, 2022, the government seized approximately $1 million in U.S.

---

[1] The government will provide a transcription of the hearing to aid the District Court in its *de novo* hearing on the detention issue.

currency during their search of Khanna's New Jersey residence. However, it is not known whether Khanna has other large amounts of cash available to him.

During the investigation the government intercepted wire and electronic communications which demonstrate Khanna's connections and control over numerous other conspirators, some of which have yet to be identified. The overall value of the criminal activity relevant to Khanna is approximately $543 million.

Within the past three to four years, Khanna was naturalized a United States Citizen. Even if Khanna has or agrees to surrender his passport, he could possibly request another passport from his country of origin.

## III.

## The Government's Argument and Authority

This case is eligible for a detention order because this case involves a serious risk defendant will flee and serious risk of obstruction of justice. *See* Title 18, United States Code, Sections 3142(f)(2)(A) and 3142(f)(2)(B). The Court should detain defendant because there are no conditions of release which will reasonably assure defendant's appearance as required. The government is requesting that this Court stay the Magistrate's order of release until such time that the parties can be heard before this Court on the government's motion for revocation of the order authorizing the pretrial release of Khanna. *See* Title 18, United States Code, Section 3145(a). This Court's review of the Magistrate's detention or release order is reviewed *de novo*,

that is, an independent review of the decision. *See United States v. Tortora*, 922 F.2d 880, 883 (1st Cir. 1990).

## IV.

## Conclusion

The government requests a stay of the issuance of the release order and that the Court revoke the release order after a hearing on this motion.

Respectfully submitted,

CLINTON J. JOHNSON
UNITED STATES ATTORNEY


BY: */s/ David A. Nasar*
   David A. Nasar, NY Reg. # 4222568
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

## Certificate of Service

I certify that on November 16, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and emailed a copy to the attorney for Navin Khanna at alan@egattorneys.com.

 /s/ *David A. Nasar*
David A. Nasar
Assistant United States Attorney